UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AZIZULLAH QASEMI,

        *Petitioner*,

v.

LADEON FRANCIS, New York Field Office Director for U.S. Immigration and Customs Enforcement, *et al.*,

        *Respondents.*

---

Case No. 1:25-cv-10029-LJL

 

**PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**

**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 2

I.   Petitioner's detention is governed by 8 U.S.C. § 1226(a), not § 1225(b)(1)(B)(ii) ............ 2

II.  Petitioner's detention violates his procedural due process rights ....................................... 7

III. Petitioner's detention violates his substantive due process rights .................................... 13

IV.  The appropriate remedy is release, including interim release under *Mapp v. Reno* ......... 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Al-Thuraya v. Warden*,
  No. 25 Civ. 2582, 2025 WL 2858422 (S.D.N.Y. Oct. 9, 2025) ......................................... 5, 12

*Barco Mercado v. Francis*,
  No. 1:25-cv-06582-LAK, 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025) .............................. 2, 3

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ............................................................................................................ 13

*Dep't of Homeland Security v. Thuraissigiam*,
  591 U.S. 103 (2020) .............................................................................................................. 7

*Diallo v. Maldonado*,
  No. 25-cv-5740, 2025 WL 3158295 (E.D.N.Y. Nov. 12, 2025) .................................... 8, 9, 10

*Huamani v. Francis*,
  No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025) .............................................. 9

*Hyppolite v. Noem*,
  No. 25-CV-4304, 2025 WL 2829511 (S.D.N.Y. Oct. 6, 2025) ............................................. 14

*Kouadio v. Decker*,
  352 F. Supp. 3d 235 (S.D.N.Y. 2018) ................................................................................... 5

*Leng May Ma v. Barber*,
  357 U.S. 185 (1958) .............................................................................................................. 4

*Lopez Benitez v. Francis*,
  795 F. Supp. 3d 475 (S.D.N.Y. 2025) ................................................................................ 4, 7

*Mapp v. Reno*,
  241 F.3d 211 (2d Cir. 2001) ................................................................................................ 14

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .............................................................................................................. 7

*O.F.B. v. Maldonado*,
  No. 25 Civ. 6336 (HG), 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025) ............................10, 11

*Orellana v. Francis*,
  25-CV-04212 (OEM), 2025 WL 2402780 (S.D.N.Y. Aug. 19, 2025) ...................................11

*Pinchi v. Noem*,
  792 F. Supp. 3d 1025 (N.D. Cal. 2025) ...............................................................................8, 11

**Cases** **Page(s)**

*Poonjani v. Shanahan*,
   319 F. Supp. 3d 644 (S.D.N.Y. 2018) .................................................................................. 5, 6

*Rodriguez-Acurio v. Almodovar*,
   No. 25 Civ. 6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) ...................................... 2, 3, 4

*Rojas v. Almodovar*,
   No. 25-cv-7189, 2025 WL 3034183 (S.D.N.Y. Oct. 30, 2025) ...................................... *passim*

*Savane v. Francis*,
   No. 25-cv-6666, 2025 WL 2774452 (S.D.N.Y. Sept. 28, 2025) ..................................... 8, 9, 14

*Shaughnessy v. United States ex rel. Mezei*,
   345 U.S. 206 (1953)................................................................................................................... 6

*Singh v. Andrews*,
   No. 25-cv-801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) ................................................. 12

*Tumba v. Francis*,
   No. 25-cv-8110, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025)........................................ 4, 9, 14

*U.S. ex rel. Paktorovics v. Murff,*
   260 F.2d 610 (2d Cir. 1958) ...................................................................................................... 6

*Valdez v. Joyce*,
   No. 25 Civ. 4627, 2025 WL 1707737 (S.D.N.Y. June 18, 2025)............................................ 14

*Vasquez Salgado v. Francis*,
   No. 25-cv-6524, 2025 WL 2806757 (S.D.N.Y. Oct. 1, 2025) ................................................. 14

*Velasco Lopez v. Decker*,
   978 F.3d 842 (2d Cir. 2020) ...................................................................................................... 8

*Zadyvdas v. Davis*,
   533 U.S. 678 (2001)................................................................................................................. 13


**Statutes & Regulations** **Page(s)**

8 U.S.C. § 1182..............................................................................................................2, 3, 4, 6, 11

8 U.S.C. § 1225................................................................................................................ 2, 3, 4, 5, 7

8 U.S.C. § 1226.......................................................................................................................... 2, 4, 7

8 C.F.R. § 212.5(b)................................................................................................................ 3, 8, 10, 13

**PRELIMINARY STATEMENT**

Petitioner Azizullah Qasemi ("Mr. Qasemi") is a law-abiding asylum seeker from Afghanistan. He fled to the United States seeking safety after being subject to forced eviction and imminent and menacing death threats from the Taliban. He fears he will be harmed, tortured, and killed by the Taliban if forced to return to Afghanistan. His past persecution and fear of future persecution in Afghanistan are based on grounds for protection that are recognized by both domestic and international law. He has no criminal history in the United States or anywhere in the world.

Mr. Qasemi entered the United States through a lawful process that was in place in 2024. While in Mexico, Mr. Qasemi applied for and received an appointment via the Customs and Border Patrol One application ("CBP One app"), then reported to the U.S. border as instructed on or about May 5, 2024. Mr. Qasemi entered the United States with the permission of the U.S. Department of Homeland Security (DHS). Mr. Qasemi was initially detained, then paroled, meaning that DHS determined he was not a flight risk or danger to the community. Mr. Qasemi timely filed an asylum application and is scheduled for a trial in his asylum case on February 26, 2026. His asylum trial is consolidated with the asylum trials of his family members.

On December 2, 2025, Immigration and Customs Enforcement (ICE) notified Mr. Qasemi that he must report immediately to the ICE office at 26 Federal Plaza in New York, NY. Mr. Qasemi immediately complied. At the ICE office, officers separated Mr. Qasemi from his counsel, then arrested and detained him without any meaningful notice of the revocation of his parole status or any individualized determination about whether he poses a flight risk or danger to the community. As Mr. Qasemi was redetained without meaningful notice or an individualized determination, his case falls squarely within this Court's prior decision in *Rojas v. Almodovar*, No.

1

25-cv-7189, 2025 WL 3034183 (S.D.N.Y. Oct. 30, 2025), and he should be immediately released. Granting Mr. Qasemi's release because he is not subject to mandatory detention would be in line with more than 350 similar decisions issued by 160 different federal district judges sitting in about fifty different courts across the United States. *See Barco Mercado v. Francis*, No. 1:25-cv-06582-LAK, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025).[1]

## BACKGROUND

Mr. Qasemi incorporates the facts set forth in his Petition for a Writ of Habeas Corpus ¶¶ 19-26, ECF No. 1 ("Pet."). Petitioner adds additional facts in response to Respondents' factual submissions to provide information about his life in New York prior to his detention on December 2, 2025, the circumstances of his compliance with the Intensive Supervision Appearance Program (ISAP), and his conditions of confinement at Delaney Hall. Pet. Reply, ECF No. 14; Decl. of Azizullah Qasemi, ECF No. 14-1 ("Qasemi Decl.").

## ARGUMENT

**I.  Petitioner's detention is governed by 8 U.S.C. § 1226(a), not § 1225(b)(1)(B)(ii)**

Respondents assert that Mr. Qasemi is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). *See* Resp. Br. at 7-8. This is wrong. As explained in a recent district court decision, "[a] textual analysis of Section 1225(b) compels the conclusion that *none* of the provisions of that statute authorizing mandatory detention of noncitizens apply" to a petitioner, like Mr. Qasemi, who has been paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). *Rodriguez-Acurio v. Almodovar*, No. 25 Civ. 6065, 2025 WL 3314420, at *1 (E.D.N.Y. Nov. 28, 2025). This Court and district court judges in more than 350 decisions across the country have

---

[1] Additional federal court decisions rejecting the Respondents' interpretation of mandatory detention under Section 1225 have been issued since November 26, 2025. *See, e.g., Rodriguez-Acurio v. Almodovar*, No. 25 Civ. 6065, 2025 WL 3314420, at *1 (E.D.N.Y. Nov. 28, 2025).

rejected the Government's recent sweeping and erroneous interpretations purporting to apply Section 1225's mandatory detention provisions to noncitizens who have been living in the United States. *See, e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183 (S.D.N.Y. Oct. 30, 2025); *Barco Mercado*, 2025 WL 3295903, at *4 & n.22 (App. A collecting cases).

After Mr. Qasemi arrived in the United States in 2024, ICE paroled him into the country under 8 U.S.C. § 1182(d)(5)(A), which permits noncitizens to be paroled "into the United States" for urgent humanitarian or significant public benefit purposes. With that authorization, Mr. Qasemi lawfully moved to New York, lived with his family members, cared for his young nephews, worked at a restaurant, studied English, trained as a security guard, began a driver's education course, received a five-year work permit, and built a life. Qasemi Decl. at ¶¶ 17-18, 58-59. He regularly appeared for in-person and online ISAP check-ins, and he prepared for his upcoming asylum trial in February 2026. *Id.* at ¶¶ 19-42, 60.

Mr. Qasemi's parole into the United States under Section 1182(d)(5)(A) necessarily entailed DHS's determination he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b). Nothing in the record shows any change in circumstances. No one at DHS or ICE ever made any individualized determination that Mr. Qasemi poses a flight risk or public safety risk before he was suddenly arrested and detained on December 2, 2025, when he reported to the ICE office at 26 Federal Plaza as he was instructed to do. Mr. Qasemi's detention infringes on his liberty interest in being free from imprisonment—"the quintessential interest triggering the procedural due process protections of the Fifth Amendment, the hallmark of which is the requirement to provide notice and an opportunity to be heard." *Rodriguez-Acurio*, 2025 WL 3314420, at *2.

3

Federal district courts have rejected the government's position that § 1225(b)(1) authorizes the detention of noncitizens who, like Mr. Qasemi, were paroled into the United States under Section 1182(d)(5)(A). *See Rodriguez-Acurio*, 2025 WL 3314420, at *21. "[O]ur immigration laws have long made a distinction between those aliens who come to our shores seeking admission . . . and those who are within the United States after entry." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). Section 1225 and 1226 are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025). As this Court has recently ruled, "Respondents' reading of Section 1225 would . . . all but read Section 1226 off the books." *Tumba v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025). Because Section 1225(b)(1) does not govern Mr. Qasemi's detention, and because Respondents have never claimed that Section 1225(b)(2) governs Mr. Qasemi's detention, his detention must by governed by Section 1226(a), which provides for discretionary detention of a noncitizen based on an administrative warrant. *See Rodriguez-Acurio*, 2025 WL 3314420, at *24.

Respondents' evidence confirms that Mr. Qasemi is detained pursuant to 8 U.S.C. § 1226(a), not § 1225(b)(1)(B)(ii). On December 2, 2025, Mr. Qasemi was arrested on a Form I-200 U.S. Department of Homeland Security Warrant for Arrest of Alien pursuant to Section 1226(a). The warrant states that an immigration officer issued the warrant "pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations." Docket #9-5, Form I-200 Warrant. "Those sections correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1-287.12." *Rodriguez-Acurio*, 2025 WL 3314420, at *24. No part of the arrest warrant specifically names Section 1225(b)(1)(B)(ii) as Respondents' basis for detaining Mr. Qasemi. That is not surprising. Section 1225(b) "contains no warrant requirement, and one

4

possible indication that a person is detained pursuant to Section 1225(b) is that the person was arrested or detained *without a warrant*." *Rodriguez-Acurio*, 2025 WL 3314420, at *25 (omitting quotations and citations) (citing cases). ICE's issuance of a warrant to detain Mr. Qasemi confirms that "they understood [him] to be subject to discretionary rather than mandatory detention, since securing such a warrant was unnecessary if Respondents were actually detaining [him] under Section 1225(b)." *Id.* at *25.

None of the cases cited by Respondents apply here. *See* Resp. Br. at 8, 10. In *Al-Thuraya v. Warden*, No. 25 Civ. 2582, 2025 WL 2858422 (S.D.N.Y. Oct. 9, 2025), the petitioner did not enter the United States lawfully; DHS "revoked his release" because the petitioner "was flagged as a potential threat to national security, as someone who is suspected of engaging in terrorism or espionage"; his asylum application was denied by the Immigration Judge; and that denial was affirmed by the Board of Immigration Appeals (BIA). *Id.* at *1. In *Kouadio v. Decker*, 352 F. Supp. 3d 235 (S.D.N.Y. 2018), the petitioner "failed to establish that he was not a flight risk and that he was not a danger to the community or the United States' security"; his asylum application was denied by an Immigration Judge; and the BIA dismissed his appeal. *Id.* at 236-237. While the circumstances in *Al-Thuraya* and *Kouadio* may justify mandatory detention under Section 1225(b)(1)(B)(ii), none of those circumstances apply to Mr. Qasemi, who entered the United States with DHS permission, was paroled into the United States because DHS determined he is neither a flight risk nor a danger to the community, has never been flagged as a potential threat to national security, has a pending asylum application, and is routinely complying with his ICE and ISAP check-in requirements.

Respondents repeatedly rely on *Poonjani v. Shanahan*, 319 F. Supp. 3d 644 (S.D.N.Y. 2018), to support their claim that Mr. Qasemi's detention is governed by Section 1225(b)(1)(B)(ii).

5

Resp. Br. at 10-12, 15. But *Poonjani* too has no bearing here. The petitioner in *Poonjani* "attempted to pass through Customs with a fake passport," "did not appear for his asylum hearing and was ordered removed *in absentia*," faced arrest and federal criminal charges, pleaded guilty, was sentenced, and then an Immigration Judge denied his asylum application on the merits. *Id.* at 645-46. None of these factors apply to Mr. Qasemi. Moreover, as Respondents recognize, Resp. Br. at 10, in *Poonjani*, "the parties agree—indeed, Petitioner's counsel conceded during oral argument – that Petitioner remains 'at the threshold of initial entry' for immigration purposes." *Id.* at 648. "Given counsel's admission" that the petitioner was "on the threshold of initial entry," Judge Sullivan concluded that the petitioner's habeas petition should be denied. *Id.* For the reasons explained here, Mr. Qasemi is not "at the threshold of initial entry" because ICE paroled him "into the United States" under 8 U.S.C. § 1182(d)(5)(A). Mr. Qasemi does not concede otherwise.

Respondents rely heavily on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), Resp. Br. at 11-13, 15, but *Mezei* was an exclusion case that is factually distinguishable. Unlike *Mezei*, where the petitioner had been excluded from the United States based on an individualized determination that he posed a security risk, Mr. Qasemi was granted parole and lived freely in the United States for more than a year. Indeed, Mr. Qasemi's case is analogous to *U.S. ex rel. Paktorovics v. Murff*, where the Second Circuit held that the parole of Hungarian refugees could not be revoked "without a hearing at which the basis for the discretionary ruling of revocation may be contested on the merits." 260 F.2d 610, 612 (2d Cir. 1958); *see also Mata Velasquez*, 2025 WL 1953796, at *16 (noting that *Paktorovics* distinguished *Mezei* "because the petitioner and his family had been 'invited here pursuant to the announced foreign policy of the United States'" (quoting *Paktorovics*, 260 F.2d at 613-14)). Respondents' reliance on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Resp. Br. at 12-13, 15, is also

6

misplaced, as that case only addressed rights in the context of whether someone will be admitted into the country, not rights related to parole revocation and release from detention. Unlike the petitioner in *Thuraissigiam*, Mr. Qasemi is not seeking "the opportunity to remain lawfully in the United States." 591 U.S. at 119. Rather, Mr. Qasemi seeks release from his unlawful detention.

In sum, Mr. Qasemi is not subject to detention under § 1225(b). Accordingly, his detention must be governed by § 1226(a)—the discretionary detention statute covering individuals in removal proceedings—and requires Respondents to make an individualized assessment before detaining him. *Rojas*, 2025 WL 3034183, at *7; *Lopez Benitez*, 795 F. Supp 3d at 491-96. As explained in the next Section, Respondents failed to meet this basic due process requirement.

## II.     Petitioner's detention violates his procedural due process rights

Petitioner's detention under § 1226(a) after Respondents had previously granted him parole and without making an individualized assessment or giving him notice or an opportunity to be heard violates the Due Process Clause of the Fifth Amendment. As this Court concluded in analogous circumstances, "a noncitizen who has been neither admitted nor denied to the United States, but who is present in the country through some permission of the Government, is entitled to due process rights." *Rojas*, 2025 WL 3034183, at *7. The Fifth Amendment requires, at minimum, notice and an opportunity to be heard before the government may deprive an individual of their liberty. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To determine the process due, courts apply the tripartite *Mathews* test: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens

7

that the additional or substitute procedural requirement would entail." *Id.* at 335. Each factor weighs in favor of Petitioner.

As to Mr. Qasemi's private interest, his detention implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Petitioner's liberty interest is compounded by the fact he has been living in the community since November 4, 2024, when DHS, in its discretion, granted him parole and allowed him to enter the United States. This Court and others courts nationwide have recognized that noncitizens hold a significant liberty interest after having been released from immigration custody by authorities. *See, e.g.*, *Rojas*, 2025 WL 3034183, at *6 ("a noncitizen who is neither admitted nor denied, but who is granted permission to live in the United States, is protected by the Due Process Clause"); *Diallo v. Maldonado*, No. 25-cv-5740, 2025 WL 3158295, at *5 (E.D.N.Y. Nov. 12, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Savane v. Francis*, No. 25-cv-6666, 2025 WL 2774452, at *9 (S.D.N.Y. Sept. 28, 2025) (collecting cases).

The second *Mathews* factor—risk of erroneous deprivation—also heavily favors Mr. Qasemi. In 2024, DHS determined that Mr. Qasemi was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), when it granted him parole. Since then, Mr. Qasemi has not had any criminal history, has complied with all requirements surrounding his removal proceedings, has moved to consolidate his asylum case with his family members' asylum cases, and has routinely complied with his ISAP check-in requirements.

8

During the December 5, 2025 conference, the Government erroneously claimed that Mr. Qasemi has twice violated the conditions of alternatives-to-detention; in fact, Mr. Qasemi only missed one online ISAP check-in. Resp. Br. at 5, n.2. Mr. Qasemi never intended to miss this virtual check in. Qasemi Decl. at ¶ 23. This check-in occurred during a period of time when Mr. Qasemi was exhausted from working at his restaurant job from 7 p.m. to 3 a.m. and commuting about two hours each way to and from the restaurant. *Id.* at ¶ 24. As soon as Mr. Qasemi realized that he missed the online ISAP check-in, which was the very next day, he immediately apologized via the ISAP app and tried to rectify the situation by checking in through the ISAP app. *Id.* at ¶ 24; *see also* ECF No. 14-3 (showing a screenshot from the ISAP app of Mr. Qasemi's efforts). The ISAP app did not permit Mr. Qasemi to check in and Mr. Qasemi never received a response about how to check in, despite requesting an opportunity to do so. *Id.* Critically, no officers ever told Mr. Qasemi that he was at risk for arrest and detention because of his one missed online ISAP check-in from December 2024. Qasemi Decl. at ¶ 35. For more than a year, both prior to and subsequent to this missed online appointment, Mr. Qasemi complied with all his other ISAP check-in requirements both online and in-person. *Id.* at ¶¶ 19-35. Mr. Qasemi also immediately complied with the ICE request for him to report to 26 Federal Plaza on December 2, 2025. *Id.* at ¶¶ 36-42.

There is no evidence—nor have Respondents suggested any—that Mr. Qasemi now poses a danger to the community or a flight risk. Despite this, Respondents have detained Mr. Qasemi without making an individualized assessment to justify his detention after being granted parole. This is irreconcilable with the requirements of due process. *Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) ("Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made."). The lack of this bare minimum process, let alone notice or an opportunity to be heard, significantly increases the risk of

9

erroneous detention. *See Diallo*, 2025 WL 3158295, at *5; *Savane*, 2025 WL 2774452, at *9; *Tumba*, 2025 WL 3079014, at *6-*7.

Lastly, the third factor—the government's interest—also favors Mr. Qasemi. "[A]lthough Respondents have a 'weighty' interest in the efficient administration of the immigration laws, Respondents would not be overly burdened by providing, at a minimum, the notice required," *Diallo*, 2025 WL 3158295, at *5, or, at a minimum, making an individualized determination as to why Mr. Qasemi should be detained after having been granted parole. Respondents have provided no evidence suggesting that they made an individualized determination about why Mr. Qasemi should be detained in December 2025. By omission, Respondents concede that they did *not* make an individualized determination about Mr. Qasemi. *See* Resp. Br. at 11-12 (arguing only that "Petitioner's detention is not unreasonably prolonged" and failing to argue that the Respondents made any individualized determination about Mr. Qasemi).

Respondents claim that Mr. Qasemi's parole expired, and because of this, Respondents were entitled to detain him without any individualized assessment and without any process. *See* Resp. Br. at 1-3, 5-6, 10-11, 20. The Government's argument is unpersuasive and has been rejected by federal courts. *See, e.g.*, *O.F.B. v. Maldonado*, No. 25 Civ. 6336 (HG), 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025) (citing cases). When Mr. Qasemi received paperwork authorizing his parole, he did not understand that his parole was time limited. Qasemi Decl. at ¶¶ 12-14. The parole notice and parole letter produced by Respondents do not bear any indication that they were interpreted or translated for Mr. Qasemi in Dari, the only language in which he is fluent. ECF No. 9-4. No interpreters or translators were present when Mr. Qasemi received the parole paperwork. Qasemi Decl. at ¶ 13.

In any event, while the expiration of parole may implicate the process required to terminate parole as a matter of DHS's own regulations,[2] *see* 8 C.F.R. § 212.5(e)(1), the purported expiration of Mr. Qasemi's parole does not change the constitutional due process analysis. After being granted parole, Mr. Qasemi moved to New York City, lived with his family members, cared for his nephews, worked, studied English, completed security guard training, and began driver's education classes. *See Rojas*, 2025 WL 3034183, at *7 (describing similar aspects of liberty); *Pinchi*, 792 F. Supp. 3d at 1032-33 (same). Those facts do not evaporate on an arbitrary expiration date set by DHS. Rather, as a constitutional matter, Mr. Qasemi "enjoyed all the privileges of a free man with the permission of the Government, and thus acquired a liberty interest under the Due Process Clause." *Rojas*, 2025 WL 3034183, at *7.

In *O.F.B.*, as in Mr. Qasemi's case, ICE arrested and detained a law-abiding asylum seeker who entered the United States with a CBP One appointment, was paroled pursuant to 8 U.S.C. § 1182(d)(5), and had a pending asylum application. In *O.F.B.*, the government argued that because the petitioner's "parole expired, he is no longer considered to be present in the country, but rather 'restored to the status that he had at the time of parole.'" *O.F.B.*, 2025 WL 3277677 at *5. The *O.F.B.* court rejected the government's position, concluding, "Section 1225 does not apply to a noncitizen like Petitioner, who has been living in the United States for years, and that his detention can only be authorized if it came about as a result of procedures compliant with 8 U.S.C. § 1226(a)." *Id.* This Court should reach the same conclusion here.

Moreover, as in *Rojas*, Mr. Qasemi "was never stripped of his parole status." *Rojas*, 2025 WL 3034183, at *8. Neither he nor his counsel ever received a "Notice of Termination of Parole"

---

[2] In making this point, Petitioner does not concede that Respondents followed the operative regulations before detaining him.

11

or any other document indicating that he would be taken into custody prior to his abrupt arrest and detention on December 2, 2025. *See Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2402780, at *2 (S.D.N.Y. Aug. 19, 2025). As in *Rojas*, Mr. Qasemi "is protected by the Due Process Clause and was therefore entitled to at least a notice of revocation of parole, issued pursuant to the statute and regulations, including an individualized reason for its termination." *Id.*

Respondents also claim that because Petitioner is an applicant for admission and was released on parole, he must be treated for constitutional purposes as if he was stopped on the border and is only due the process that Congress has prescribed. *See* Resp. Br. at 11-14. Respondents reference the concept of "entry," *id.* at 10-12, but misunderstand its application here. In *Al-Thuraya*, cited by Respondents, Resp. Br. at 8, a judge in the Southern District of New York recently explained when rejecting this exact argument, "under the entry fiction, an applicant for admission to the country is treated as if he were stopped at the border for the purposes of his application for admission." *Al-Thuraya v. Warden*, No. 25-cv-2582 (AS), 2025 WL 2858422, at *3 (S.D.N.Y. Oct. 9, 2025). "In other words, while a person seeking legal entry into the United States may be granted physical entry into the country pending the determination of his application for admission, the mere fact of his physical presence within our borders provides him no greater constitutional protection *as to his application* than if he were outside the country." *Id.* Here, the "the entry-fiction exception is inapplicable" because Petitioner's due process claims "do[] not concern his application [for admission] at all, just the legality of his detention while" that application is pending in immigration court. *Id.* at *4. Thus, "[t]he Due Process Clause protects petitioner, a person inside the United States, from unlawful detention." *Singh v. Andrews*, No. 25-cv-801, 2025 WL 1918679, at *6 (E.D. Cal. July 11, 2025); *Rojas*, 2025 WL 3034183, at *8 (due process applies to noncitizen on parole).

In sum, as in *Rojas*, the Court's conclusion here should be "simple." *Rojas*, 2025 WL 3034183, at *9. Mr. Qasemi was paroled into the United States. He "lived here freely" for more than a year. *Id.* When he received parole paperwork, he did not understand that his parole status was limited to one year. Qasemi Decl. at ¶¶ 12-14; Docket # 9-4. "He is therefore entitled to notice of such revocation before it occurs, and an individualized explanation as to why." *Rojas*, 2025 WL 3034183, at *9. That did not happen. Mr. Qasemi is therefore entitled to release.

### III. Petitioner's detention violates his substantive due process rights

Petitioner's detention also violates the substantive due process protections under the Fifth Amendment. The Fifth Amendment guarantees that people in civil detention may not be subject to conditions of confinement that "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Civil detention is unconstitutionally punitive when it is not "reasonably related to a legitimate goal." *Id.* at 538-39. In the immigration context, the only legitimate government objectives for detaining a noncitizen during removal proceedings are preventing danger to the community and flight risk. *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). In the absence of any evidence for either of those purposes, detention violates the substantive due process rights to be free from purposeless confinement. *See Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025).

Here, as explained *supra*, DHS already determined that Mr. Qasemi is "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), when it granted him parole, and Respondents did not make any individualized determination to the contrary before it arrested and detained Mr. Qasemi. In detention, Mr. Qasemi is hungry because the facility does not offer sufficient amounts of halal food. Qasemi Dec. at ¶ 51. He is experiencing stomach pain and stomach acid and the medication he needs is unavailable. *Id.* He is ashamed because he is required to shower without

13

privacy in front of other men in violation of his religious beliefs. *Id.* And, he is having difficulty sleeping because the lights are on and the TV is on a high volume near his bunk bed all night. *Id.* Therefore, detaining Mr. Qasemi with no legitimate reason to do so is unconstitutionally punitive.

### IV.    The appropriate remedy is release, including interim release under *Mapp v. Reno*

The appropriate remedy is release. In recent cases in which courts have found that a noncitizen's arrest and detention were deficient from the start, courts have ordered release as the remedy. *See, e.g.*, *Rojas*, 2025 WL 3034183, at *9; *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *16 (S.D.N.Y. Oct. 6, 2025); *Savane*, 2025 WL 2774452, at *10; *Tumba*, 2025 WL 3079014, at *9 (granting release where the petitioner's "detention was illegal from the start because of the lack of any due process").

Moreover, this Court should grant immediate release pending adjudication of the habeas petition under *Mapp v. Reno*, 241 F.3d 211 (2d Cir. 2001). Mr. Qasemi's claims are substantial, as explained above. Mr. Qasemi's hunger in detention, stomach pain, stomach acid, shame while showering, and difficulty sleeping, *see* Qasemi Decl. at ¶ 51, collectively constitute an extraordinary circumstance. And release is necessary to make the remedy effective. If Mr. Qasemi is not released during the pendency of this action and later prevails, "the remedy will be ineffective as it will have failed to prevent [him] from the very unlawful detention to which [he] is objecting." *Vasquez Salgado v. Francis*, No. 25-cv-6524, 2025 WL 2806757, at *8 (S.D.N.Y. Oct. 1, 2025).

## CONCLUSION

For the foregoing reasons, Mr. Qasemi respectfully requests that the Court grant his petition for a writ of habeas corpus and order Respondents to immediately release him.

Dated:      December 11, 2025
            New York, New York


Respectfully submitted,

/s/ Elora Mukherjee

Elora Mukherjee, Esq.
Morningside Heights Legal Services, Inc.
435 W. 116th Street
New York, NY 10027
Telephone: (212) 854-4291
emukherjee@law.columbia.edu

*Pro Bono Counsel for Petitioner*

15